RDW2016R00427

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17- 3·2 1 ( ₵-ℬ₭ ) |
| | : | |
| v. | : | 18 U.S.C. § 1349 |
| | : | |
| MATTHEW TEDESCO | : | INFORMATION |
| | : | |

The defendant having waived in open court prosecution by indictment, the Acting United States Attorney for the District of New Jersey charges:

1.    At all times relevant to this Information:

    a.    Defendant MATTHEW TEDESCO was a resident of New Jersey.

    b.    In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local government public employees, retirees, and eligible dependents. The School Employees' Health Benefits Program ("SEHBP") offered medical and prescription drug coverage to qualified local education public employees, retirees, and eligible dependents. SHBP and SEHBP each were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

    c.    Pharmacy Benefits Administrator provided pharmacy benefit management services for SHBP and SEHBP beneficiaries pursuant to a contract with the State of New Jersey. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator then billed the State of New Jersey based on the amount paid to the pharmacies for claims on behalf of SHBP and SEHBP beneficiaries. Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

1

2.    At all times relevant to this Information:

a.    In general, compounding was a practice in which a licensed pharmacist combines, mixes, or alters ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient. Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

b.    Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

c.    Compounding Pharmacy was a pharmacy located outside of New Jersey that prepared compounded medications. When Compounding Pharmacy received a prescription for a compounded medication for an individual with prescription drug coverage under SHBP and SEHBP administered by Pharmacy Benefits Administrator, Compounding Pharmacy would electronically verify coverage with Pharmacy Benefits Administrator, fill the prescription by mailing the compounded medication to the individual, bill Pharmacy Benefits Administrator for the prescription, and receive payment from Pharmacy Benefits Administrator. In 2015 and 2016, Pharmacy Benefits Administrator paid Compounding Pharmacy in excess of $50,000,000 for compounded medications mailed to individuals in New Jersey.

3.     From in or about January 2015 through in or about April 2016, in Atlantic

County, in the District of New Jersey, and elsewhere, defendant

MATTHEW TEDESCO

did knowingly and willfully conspire and agree with others to execute a scheme and artifice to

defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses,

representations, and promises, money and property owned by, or under the custody and control

of, a health care benefit program in connection with the delivery of and payment for health care

benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

## Object of the Conspiracy

4.     It was the object of the conspiracy for defendant MATTHEW TEDESCO and

others to unlawfully enrich themselves by causing the submission of false and fraudulent

insurance claims for medically unnecessary compounded prescription medications to Pharmacy

Benefits Administrator and by receiving a percentage of the money Pharmacy Benefits

Administrator paid Compounding Pharmacy for those compounded prescription medications.

## Manner and Means of the Conspiracy

5.     It was part of the conspiracy that defendant MATTHEW TEDESCO and others

learned that Pharmacy Benefits Administrator would reimburse thousands of dollars for one

individual's one month supply of certain prescription compounded medications, including

compounded vitamin combinations, pain creams, scar creams, antifungal creams, and libido

creams.

6.     It was further part of the conspiracy that, for the compounded medication

prescriptions they arranged, defendant MATTHEW TEDESCO and others would receive from

3

Compounding Pharmacy a percentage of the amount that Compounding Pharmacy received from Pharmacy Benefits Administrator for the medication.

       7.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others recruited state and local government and education employees who had benefits under the SHBP and SEHBP and had a prescription drug benefit administered by Pharmacy Benefits Administrator.

       8.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others paid other individuals to recruit state and local government and education employees who had benefits under the SHBP and SEHBP and had a prescription drug benefit administered by Pharmacy Benefits Administrator.

       9.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others, with no medical training or licenses and with the sole purpose of receiving money from Compounding Pharmacy, would persuade these individuals to obtain compounded prescription medications from Compounding Pharmacy without any evaluation by a medical professional that the individuals had a medical necessity for the compounded prescription medications.

      10.    It was further part of the conspiracy that defendant MATTHEW TEDESCO and others would obtain insurance information from these individuals and complete and cause the completion of prescriptions for compounded medications for the individuals, even though the individuals had no medical necessity for the compounded medications.

      11.    It was further part of the conspiracy that defendant MATTHEW TEDESCO and others would use pre-printed prescription forms for compounded medications and would specifically select medications on the form with the highest possible reimbursement, without any consideration of the medical necessity of the medications.

4

12.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others would have the pre-printed prescription forms marked to request 12 months of refills in order to obtain the highest possible reimbursement, without regard for the medical necessity of receiving the medications for 12 months.

13.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others secured the signatures of doctors and other qualified health care professionals on pre-printed prescriptions for individuals (a) without the doctors having a doctor/patient relationship with the individuals, (b) without the doctors evaluating whether the individuals had a medical necessity for a compounded medication; (c) without the doctors considering a non-compounded prescription or over-the-counter medication for the individuals; and/or (d) without the doctors having evaluated whether the compounded medication would have any adverse effect on the individuals.

14.     It was further part of the conspiracy that once a pre-printed prescription was completed with the signature of a doctor or other qualified health care professional, defendant MATTHEW TEDESCO and others did not return the prescription to the individual to be filled at a pharmacy chosen by the individual; instead, defendant MATTHEW TEDESCO and others caused the completed prescription to be faxed to Compounding Pharmacy, which filled the prescriptions and billed Pharmacy Benefits Administrator.

15.     It was further part of the conspiracy that defendant MATTHEW TEDESCO and others caused the payment of money and other benefits to doctors to reward them for signing prescriptions for compounded medications.

5

16. It was further part of the conspiracy that defendant MATTHEW TEDESCO and others caused the payment of money and other benefits to individuals to reward them for agreeing to obtain prescriptions for compounded medications.

17. It was further part of the conspiracy that defendant MATTHEW TEDESCO caused Pharmacy Benefits Administrator to pay Compounding Pharmacy approximately $28,773,906.97 for compounded medications.

18. It was further part of the conspiracy that defendant MATTHEW TEDESCO received approximately $11,166,844.20 in payments for submitting false and fraudulent claims for compounded medications.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1.     As a result of committing the offenses alleged in this Information, defendant MATTHEW TEDESCO shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a forfeiture money judgment in the amount of $11,166,844.20, representing all property constituting or derived from proceeds traceable to the commission of the offense to which he is pleading guilty.

2.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third person;
>
> c.   has been placed beyond the jurisdiction of the Court;
>
> d.   has been substantially diminished in value; or
>
> e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.


WILLIAM E. FITZPATRICK
Acting United States Attorney

7